James Edward Welsh, Presiding Judge
Stanford Barton appeals his conviction, following a jury trial, on one count of the class D felony of criminal nonsupport ( § 568.040, RSMo[1] ), for which he was sentenced to two years' incarceration. We affirm.
Background
In December 2014, the State charged Barton with the class D felony of criminal nonsupport under section 568.040, for knowingly failing to provide adequate support in March 2014, for his son ("Son"), whom he was legally obligated to support, and for amassing an arrearage in excess of twelve monthly child support payments. Viewed in the light most favorable to the verdict, State v. Baumruk , 280 S.W.3d 600, 607 (Mo. banc 2009), the following evidence was presented at Barton's trial.
Barton married Son's mother ("Mother") in July 1997, and Son was born five years later in May 2002. The couple separated the following November, and Son remained in Mother's custody. When the marriage was dissolved in December 2005, Mother was awarded sole legal and physical custody of Son. Prior to the dissolution, the court had ordered Barton to pay Mother $602 per month in temporary child support. The dissolution decree ordered Barton to pay $841 per month in child support, retroactive to the petition filing date. The amount was based on the finding that Barton was capable of earning at least $3,400 per month. At the time of the dissolution, Barton owed Mother over $24,000 in child support.
The State introduced a child support Payment History Report at trial. It reflected that Barton was over $28,000 in arrears by March 2006 and was again in arrears from July 2010 until November 2011, at which time he owed $4,100. Both those arrearages were eventually satisfied by garnishments on Barton's savings accounts. Barton's final arrearage (for which he was charged in March 2014) began in November of 2012 and continued until he had amassed an arrearage of over $10,200.
*586 Mother testified that Barton did not pay any child support or in any way provide for Son in March 2014, and she confirmed that his arrearage exceeded twelve monthly payments by that time. Mother stated that she had worked two part-time jobs to provide for Son. She was unaware that Barton had undergone any back surgeries.
Barton testified that he had worked as an electrician and received job assignments from the local union until 2013. He admitted that he had prior convictions for larceny in the 1980s, a DUI in 1999, and "a domestic" offense in 2012 or 2013. Barton agreed that he was ordered to pay $841 per month in child support and that he "knew in March of 2014 that [he was] not providing any support for [Son]." Barton claimed that he had suffered a back injury at work in February 2013, and he introduced his medical records. He stated that he had sought medical treatment for over a year before having back surgeries in April and June 2014, had been declared "disabled" by two doctors, and was unable to work due to his disability. Barton claimed to have received temporary disability payments from his union from February 2013 through October of 2013, but no evidence was introduced as to the amount of those payments. He claimed to be seeking Social Security disability but had not been awarded any by the time of trial in August of 2016. Barton also "pursued worker's comp, but nothing ever came of it," he said.
Following Barton's testimony, the trial court overruled his motion for judgment of acquittal at the close of all the evidence. During closing argument, the State argued that Barton had purposely maintained his inability to adequately support his son. The jury ultimately convicted Barton of the class D felony of criminal nonsupport and, following the punishment phase of the trial, recommended a sentence of two years in prison.
At sentencing several weeks later, defense counsel argued for leniency, stating that Barton was now working, had $990 garnished from his paychecks, and had obtained insurance on Son. The State noted that, although Barton had "suddenly" decided that he could work, he still owed $34,187 in back child support. The trial court overruled Barton's post-trial motion for judgment of acquittal or for a new trial and sentenced him to two years in prison.
Point I: "Good Cause"
In his first point, Barton argues that the trial court erred in overruling his motion for judgment of acquittal at the close of all the evidence and sentencing him on his conviction for criminal nonsupport. He claims that he presented sufficient evidence to prove his affirmative defense of "good cause" by a preponderance of the evidence by establishing that he had a legitimate "substantial reason" for being unable to provide support, i.e. , his disability.
Standard of Review
To determine whether the evidence was sufficient to support a conviction and to withstand a motion for judgment of acquittal, we accept as true all the evidence and reasonable inferences that support the verdict and ignore all contrary evidence and inferences. State v. Holmes , 399 S.W.3d 809, 812 (Mo. banc 2013). We assess only whether sufficient evidence was presented from which the jury reasonably could have found guilt. Id. We do not re-weigh the evidence; instead, we give "great deference" to the trier of fact. State v. Porter , 439 S.W.3d 208, 212 (Mo. banc 2014). The assessment is not whether this Court believes that the evidence established guilt beyond a reasonable doubt but, rather, whether, in light of the evidence most favorable to the verdict, any rational fact-finder *587 could have found guilt beyond a reasonable doubt. State v. Miller , 372 S.W.3d 455, 463 (Mo. banc 2012).
Discussion
"[A] parent commits the crime of nonsupport if [he] knowingly fails to provide adequate support which [he] is legally obligated to provide for [his] child." § 568.040.1. "Adequate support" is a question of fact for the jury. State v. Link , 167 S.W.3d 763, 766 (Mo. App. W.D. 2005). While not conclusive, a child support order is evidence of what constitutes adequate support. State v. Claycomb , 470 S.W.3d 358, 363 (Mo. banc 2015). "Criminal nonsupport is a class A misdemeanor, unless the total arrearage is in excess of an aggregate of twelve monthly payments due under any order of support ..., in which case it is a class D felony." § 568.040.5.
An "[i]nability to provide support for good cause" is an affirmative defense which the proponent "has the burden of proving ... by a preponderance of the evidence." § 568.040.3; State v. Meacham , 470 S.W.3d 744, 746-48 (Mo. banc 2015).[2] "Good cause" is "any substantial reason why the defendant is unable to provide adequate support." § 568.040.2(2). "Good cause does not exist if the defendant purposely maintains his inability to support." Id. "Affirmative defense," as used in the criminal code, means (1) that the defense "is not submitted to the [jury] unless supported by evidence," and (2) if submitted, "the defendant has the burden of persuasion that the defense is more probably true than not." § 556.056.[3] Thus, Barton had both the burden of production and the burden of persuasion on his "good cause" affirmative defense.
Barton concedes that the evidence was sufficient for the jury to find that, in March 2014, he knowingly failed to provide adequate support for his son, whom he was legally obligated to support, and that his total arrearage exceeded twelve monthly support payments. § 568.040. He argues, however, that he presented sufficient evidence to prove his affirmative defense of "good cause" by a preponderance of the evidence. Barton contends that his uncontradicted evidence showed that he suffered an injury in February 2013 and was physically unable to work; thus, he established that he had a "substantial reason" why he could not provide support and that he did not purposely maintain his inability to do so.
The issues pertaining to the affirmative defense were for the jury to decide. Here, the jury obviously found that Barton failed to prove that he had "good cause" for his failure to provide support. Thus, the question before us is whether, viewing the evidence and its inferences in the light most favorable to the verdict, the jury reasonably could have reached that conclusion. See Holmes , 399 S.W.3d at 812. Barton's arguments ignore that the jury is free to determine the weight and credibility of the *588 evidence and is free to believe all, some, or none of any witness's testimony. State v. Dulany , 781 S.W.2d 52, 55 (Mo. banc 1989).
The jury was not required to accept Barton's self-serving statements and was entitled to reject his testimony as not credible. See id. Barton admitted that "back in the 80s, I was a bad boy," referring to his prior conviction for larceny. He also admitted to prior convictions for a DUI and a domestic offense. Moreover, his testimony as to his injuries and work history lacked consistency. He was inconsistent as to how long he was on light duty after his injury before he was fired and as to how long he received temporary disability benefits from his union. Barton admitted that from February 2013 until March 2014, he did not look for work in or out of his field because he was "going to the doctor twice a week and coming to this courthouse three times a week." He also agreed that he did not try to find a job where his back injury would not be a hindrance. Furthermore, given that Barton's own testimony established that he had been unsuccessful with his various disability claims, the jury could find that his claims of disability were not credible or did not support his "good cause" defense.
In any event, the evidence was that Barton had failed to pay child support for long periods of time both before and after he was purportedly injured. The Payment History Report showed that Barton had failed to pay support during the pendency of the dissolution and accumulated massive arrearages which were satisfied by garnishment. Then, beginning in November 2012, four months before his claimed injury, Barton began accruing the arrearage he had at the time of trial. Barton initially testified that he had no arrearage before his injury but then admitted on cross-examination that, at the time of his injury, he owed $1,294 in back child support. The foregoing evidence would support the inference that Barton was unwilling to pay child support whether he was working or not, and whether he was injured or not.
Circumstantial evidence, such as evidence that indicates an ability to work or the defendant's unwillingness to pay, can be sufficient to support a finding of lack of good cause. State v. Coe , 233 S.W.3d 241, 250-51 (Mo. App. S.D. 2007). "Where different inferences are reasonably deducible from the facts and circumstances of a case, it is for the [jury] to determine which inference shall be drawn," and we "may not cast aside their inferences" for one of our own. State v. Simpson , 315 S.W.3d 779, 783 (Mo. App. W.D. 2010). Barton repeatedly points out that his medical evidence was uncontradicted by the State, but, as explained in Meacham , the State is not required to disprove "every fact constituting any and all affirmative defenses related to the culpability of an accused." 470 S.W.3d at 748.
Barton asserts that he presented "sufficient evidence" to prove his defense. We agree that Barton produced sufficient evidence to submit his affirmative defense of "good cause" to the jury and, perhaps, prevail. But "sufficient evidence" to submit does not guarantee success. Barton had the burden both of production and of persuasion on his affirmative defense. See § 556.056. He satisfied his burden of production, but apparently failed to satisfy his burden of persuasion. Keeping in mind that the jury may believe all, part, or none of the testimony of any witness, and having reviewed the record in the light most favorable to the judgment, we find that the jury reasonably could have found that Barton failed to meet his burden of persuasion.
The trial court did not err in overruling Barton's motion for judgment of acquittal at the close of all the evidence. The State *589 proved the elements of the offense, and the jury was not obligated to believe Barton's evidence on his affirmative defense. Point I is denied.
Points II and III: "Closing Arguments"
In Points II and III, Barton claims that the trial court plainly erred in allowing the State to argue in closing that he "did nothing to get a job or to remedy his disability" (Point II) and "purposely maintained his disability by not receiving physical therapy" (Point III). He contends that the prosecutor improperly misrepresented his medical evidence and expressed her own personal opinions about "the extent of Barton's disability and his inability to work" and about what "should have been the proper course of treatment" for Barton. Barton claims that these "improper" arguments confused the jury and caused manifest injustice.
Barton concedes that he failed to properly preserve this claim by not objecting to the statements that he now alleges were improper; thus, he requests plain error review. Rule 30.20 authorizes this Court to review, in its discretion, "plain errors affecting substantial rights ... when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." Our Supreme Court has established a threshold review to determine if a court should exercise its discretion to entertain a Rule 30.20 review of a claimed plain error. First, we determine whether or not the claimed error "facially establishes substantial grounds for believing that 'manifest injustice or miscarriage of justice has resulted[.]' " State v. Brown, 902 S.W.2d 278, 284 (Mo. banc 1995) (quoting Rule 30.20). If not, we should not exercise our discretion to conduct a Rule 30.20 plain error review. If, however, we conclude that we have passed this threshold, we may proceed to review the claim under a two-step process pursuant to Rule 30.20. In the first step, we decide whether plain error has, in fact, occurred. Baumruk , 280 S.W.3d at 607. All prejudicial error is not plain error; "plain errors are those which are evident, obvious and clear." Id. In the absence of evident, obvious, and clear error, we should not proceed further with our plain error review. If we find plain error, we must continue to the second step to consider whether or not a miscarriage of justice or manifest injustice will occur if the error is left uncorrected. Id. at 607-08.
"The trial court maintains broad discretion in controlling closing arguments." State v. Deck , 303 S.W.3d 527, 540 (Mo. banc 2010). "[P]lain error relief as to closing argument should rarely be granted and is generally denied without explanation." State v. Vorhees , 342 S.W.3d 446, 451 (Mo. App. S.D. 2011). This is because the absence of an objection during arguments means that any trial court intervention would be uninvited and may cause increased error. State v. Perry , 275 S.W.3d 237, 245 (Mo. banc 2009). "Under plain error review, a conviction will be reversed for improper closing argument only when it is established that the argument had a decisive effect on the outcome of the trial and amounts to manifest injustice." Deck , 303 S.W.3d at 541.
Barton complains about the State's arguments that he "did nothing" to look for a job in or out of his chosen field, did not look for a job that could accommodate his restrictions, and did not pursue physical therapy. But those arguments were simply a summary of what the prosecutor believed the credible evidence and its reasonable inferences showed. In any event, having reviewed the record in light of this claim, we do not find that Barton's claim "facially establishes substantial grounds" for believing that he has been a victim of "manifest injustice." We, therefore, exercise our discretion to decline full plain error review. Points II and III are denied.
*590 Conclusion
Based on the foregoing, we affirm the trial court's judgment.
All concur.

Statutory citations are to the Revised Statutes of Missouri (RSMo) 2000, as updated by the 2013 Cumulative Supplement unless otherwise noted.

Under the relevant version of the statute, "without good cause" is not a definitional element of the crime, but, rather, is an affirmative defense. Meacham , 470 S.W.3d at 747-48. Prior to 2009, "without good cause" was an element of the offense of criminal nonsupport, as opposed to an affirmative defense . Id. at 746 (citing § 568.040.1, RSMo 2000 ). In 2009, when the legislature amended the statute, "without good cause" remained an element of the offense but was also added as an affirmative defense. Id. (citing § 568.040.3, RSMo Cum. Supp. 2009). In 2011, the legislature removed lack of good cause as an element of the offense but retained it as an affirmative defense that "the defendant must raise and prove by a preponderance of the evidence." Id. at 746-48 ; § 568.040.3, RSMo Cum. Supp. 2011. That is the version of the statute applicable to this case.

This definition has since been transferred to section 556.061(2), RSMo 2017.